## Burke *v.* Burke, et al., Appellants.

*Witnesses—Competency—Party dead — Disclaimer — Tendering costs—Ejectment—Act of May 23, 1887, P. L. 158.*

1. In the trial of an action of ejectment to establish plaintiff's title to certain realty and for mesne profits, where the defendants were the brother and sister of the plaintiff and the husband of the sister, and it appears that the father of the brothers and sister was formerly the owner of the property in question, and that the father had, with his wife, deeded the same to defendant's brother, through whom defendants claimed, and that plaintiff claimed through a deed from defendant's brother to his mother, and from her to plaintiff, and the defense was that the latter deed was a forgery, neither defendant's brother nor his sister are competent witnesses as to anything occurring before the death of the mother. The sister is not made a competent witness by the filing of a disclaimer, where she did not also tender the costs as required by the Act of May 23, 1887, P. L. 158. Even in such case she would not be competent in view of the fact that her husband was a defendant on the record and, therefore, incompetent; his incompetency made her incompetent also.

*Deed—Forgery—Evidence—Court and jury—Ejectment.*

2. The law presumes that a deed was duly executed and acknowledged, and the evidence in support of forgery or fraud should be sufficiently explicit to rebut the presumption. Neither fraud

nor forgery will be presumed, and when it is alleged and attempted to be shown the evidence must be sufficiently clear and explicit for the jury reasonably to find it as a fact. If the evidence is not of this character, the court should withdraw the case from the jury.

3. In the trial of an action of ejectment, the only evidence produced by the defendants to establish their contention, that a deed relied upon in plaintiff's chain of title was a forgery, was the testimony of a justice of the peace who appeared to have taken an acknowledgment to the said deed and to have signed the same as a witness thereof twenty years before. His recollection was very hazy as to his part in the transaction, and while he said in terms that he did not take the acknowledgment, his testimony as a whole disclosed the fact that he had neither a clear nor distinct recollection in regard to the matter. He admitted that he had said, when asked by the plaintiff, that he could not remember anything about it, and had also stated to one of the defendants that his recollection was not clear and he could not help them and they had better settle the case. *Held,* that the lower court was correct in deciding that the evidence was not sufficient to send the case to the jury and in directing a verdict for plaintiff.

Argued February 25, 1913. Appeal, No. 309, Jan. T., 1912, by defendants, from judgment of C. P. Lackawanna Co., Sept. T., 1909, No. 896, on verdict for plaintiff in case of William F. Burke v. Patrick Burke, Julia Burke Keating and Thomas Keating. Before FELL, C. J., MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Action of ejectment and for mesne profits. Before O'NEILL, J.

The opinion of the Supreme Court states the facts.

Verdict for plaintiff by direction of the court for land described in the writ and judgment thereon. Defendants appealed.

*Errors assigned* were sustaining objection to the competency of Julia Burke Keating as a witness, and giving binding instructions in favor of the plaintiff.

*James J. Powell,* with him *John P. Quinnan,* for ap-

pellants.—Julia Burke Keating was competent before filing her disclaimer: Wolf v. Carothers, 3 S. & R. 240; Dickson v. McGraw, 151 Pa. 98; Lancaster County Nat. Bank v. Henning, 171 Pa. 399; First National Bank v. Gerli, 225 Pa. 256; Horn v. Petty, 192 Pa. 32.

Julia Burke Keating was certainly competent after filing her disclaimer: Africa v. Trexler, 232 Pa. 493.

*Joseph O'Brien,* for appellee, cited: Berger v. Berger, 44 Pa. Superior Ct. 305; Africa v. Trexler, 232 Pa. 493; Kirk v. Ewing, 2 Pa. 453; Dorris v. Morrisdale Coal Co., 215 Pa. 638.

OPINION BY MR. JUSTICE MESTREZAT, April 21, 1913:

This is an action of ejectment brought by William F. Burke against his brother, Patrick Burke, his sister, Julia Burke Keating, and Thomas Keating, her husband. The summons was issued on July 10, 1909. John M. Burke, the father, is the common source of title through whom both parties claim.

From his statement and abstract of title, it appears that the plaintiff relies on a paper title consisting of a deed from his father and mother, John M. and Bridget Burke, to Patrick Burke, the defendant, dated January 7, 1892, acknowledged January 8, 1892, and recorded January 11, 1892; a deed from Patrick Burke to Bridget Burke, his mother, dated January 8, 1892, acknowledged January 9, 1892, and recorded January 11, 1892; and a deed from Bridget Burke to William F. Burke, the plaintiff, dated January 23, 1909, and recorded February 17, 1909. It is averred in the statement that all the defendants entered upon the land in question, ejected Bridget Burke from the same and continue to hold possession thereof. A claim for mesne profits is made against all the defendants.

The defense relies on title in Patrick Burke. He filed an answer in which he claims title from his father and mother through the deed referred to above. He avers

that possession of the land in dispute was delivered to him in pursuance of the title conveyed by his father and mother.  He denies that he conveyed the land to Bridget Burke by a deed dated January 8, 1892, as alleged in plaintiff's statement, or by any other deed, and that said deed purporting to be a conveyance of the property to his mother is not a deed made and executed by him and the same is a forgery and is fraudulent.

The sheriff returned that he served the writ on all of the defendants, "they being in actual possession of the within described premises."  The defendants entered the plea of not guilty.

The controlling question in the case, as will be observed, is whether the deed from Patrick Burke to Bridget Burke, his mother, is, as averred by him, a forgery and fraudulent.  On the trial of the cause the plaintiff offered in evidence the writ, the sheriff's return, the record of the alleged deed from Patrick to Bridget, the originals of the other two deeds, and then rested. Mrs. Keating having filed a disclaimer, she and Patrick were called as witnesses by the defendants but, on objection by plaintiff, the court ruled that they were incompetent to testify to anything that occurred in the lifetime of their mother, Bridget Burke, who died before the suit was brought.  The defendants called John Meehan, whose name appears on the record of the deed from Patrick to Bridget, as an attesting witness and also as the justice of the peace before whom the deed was acknowledged.  He was called for the purpose of showing that he did not attest the deed and that it was never acknowledged before him as a justice of the peace.  This was the only evidence for the defense and the court holding it insufficient to invalidate the recorded deed, directed a verdict for the plaintiff.  The defendants have taken this appeal.

The questions involved, as stated by the appellants, are:  (a) The competency of Julia Burke Keating as a witness before filing the disclaimer;  (b) her compe-

tency after filing the disclaimer; and (c) whether the testimony of Meehan was sufficient to warrant the court in submitting it to the jury upon the question of whether he had attested and taken the acknowledgment of the deed from Patrick Burke to Bridget Burke, his mother.

Mrs. Keating was called by the defendants for the purpose of proving that Patrick Burke's name to the deed conveying the property to Bridget Burke was signed by Nellie Burke, his sister, in the presence of John Meehan, that Patrick was not present on the occasion, and that Meehan refused to be a witness or take the acknowledgment of the deed. Mrs. Keating was a defendant, the writ had been served on her, and she had pleaded to the action. She was, therefore, clearly incompetent as a witness before filing her disclaimer. Prior to the legislation in this State making parties competent witnesses, she would have been incompetent to testify. This has been ruled time and again by this court: Lies v. Stub, 6 Watts 48; Wolf v. Fink, 1 Pa. 435; Parke v. Bird, 3 Pa. 360; Noble v. Laley, 50 Pa. 281; Karns v. Tanner, 66 Pa. 297. The witness is not disqualified on the ground of interest but from considerations of policy: Kirk v. Ewing, 2 Pa. 453; Cambria Iron Company v. Tomb, 48 Pa. 387. In the former case, ROGERS, J., delivering the opinion, says (p. 455): "There is no rule better established, than that a party to the record cannot be examined as a witness, and this not on the ground of interest, but from considerations of policy." And in the latter case, AGNEW, J., delivering the opinion says (p. 394): "He (co-defendant) was a party to the record. That a party to the record is incompetent as a witness, on the ground of policy, has become too firmly fixed to be changed as a rule of practice, except by legislation."

There is no enabling legislation in this State which would make Mrs. Keating a competent witness before she filed her disclaimer. The Act of May 23, 1887, P. L. 158, makes all persons competent witnesses save

those excepted in Section 5 of the act. Clause E of that section of the statute excepts from the provisions of the act any surviving party to a contract or any person whose interest is adverse to the right of the deceased party whose right thereto has passed to a party on the record who represents his interest in the subject in controversy. Patrick Burke and Mrs. Keating are both within this exception, and, hence, they occupy the same position so far as their competency to testify is concerned as they did prior to the passage of the Act of 1887. At the time of the trial Bridget Burke was dead. Her right to the property in question passed by her deed to her son, William F. Burke, the plaintiff, and a party to the record. Patrick Burke and Mrs. Keating are defendants in the action and in possession of the premises in dispute. Their right to retain the possession is adverse to the right or claim of the plaintiff who holds under his deceased mother. Whether they claim the title or the possession or both it is an interest adverse to the right of Bridget Burke, and brings them clearly within the exception to the statute permitting parties to testify. If the plaintiff recovers a judgment against the defendants they are all liable for mesne profits and the costs accruing in the suit. The witnesses were, therefore, incompetent to testify to anything that occurred in the lifetime of Bridget Burke.

The disclaimer of Mrs. Keating filed on the trial of the cause by the defendants did not make her a competent witness. Where one relies on a statute to establish his competency to testify, it is incumbent upon him to bring himself clearly within its provisions. Here, the defendants filed the disclaimer under Clause E of Section 5, of the Act of 1887. They, however, failed to comply with the terms imposed by the statute and, hence, the disclaimer was not effective to make the witness competent. We have already referred to the exception in Clause E of Section 5 of the act. As said in Africa v. Trexler, 232 Pa. 493, the provision of the section relative

to actions of ejectment seems to be an exception to an exception. The clause in question excepting a surviving party from the provisions of the statute confers competency on any one of the several defendants in an action of ejectment if he disclaims title to the premises in controversy, "and also pays into court the costs accrued at the time of his disclaimer or gives security therefor, as the court in its discretion may direct." The disclaimer, therefore, was not effective until the accrued costs had been paid or secured. This was not done, and, therefore, it is manifest that the filing of the disclaimer did not make Mrs. Keating a competent witness.

If, however, Mrs. Keating had complied with the Act of 1887 and paid all the accrued costs when she filed her disclaimer, there was another sufficient reason why she was incompetent to testify in the case as to anything that occurred in the lifetime of her mother. Thomas Keating, her husband, was a defendant and the writ was served on him. He joined the other defendants in entering the plea of not guilty. He was, therefore, clearly incompetent to testify, and by reason of his incompetency, his wife was also incompetent: Bitner v. Boone, 128 Pa. 567; Myers v. Litts, 195 Pa. 595.

We have carefully read the testimony of John Meehan, who, as alleged, took the acknowledgment of the deed from Patrick Burke to Bridget Burke. We agree with the learned court below that "Mr. Meehan's recollection is extremely hazy" as to his part in the transaction. This is readily accounted for by the fact that the occurrence took place about twenty years prior to the time he testified, and that during the intervening years he had taken many acknowledgments of deeds and other instruments in writing. While in terms he said he did not take the acknowledgment, yet his testimony as a whole discloses the fact that he had neither a clear nor a distinct recollection in regard to the matter. He admitted in his testimony that he took the acknowledgment to the deed from John M. Burke and wife to Pat-

rick Burke but denied that he attested the grantor's signature as a witness. He testified that he was sure that he did not sign the deed as an attesting witness and that he did not witness any deed there the night on which the deed was acknowledged. It will be recalled that the deed from John and wife to Patrick was dated January 7, 1892, and acknowledged the next day, and that the deed from Patrick to Bridget purported to be dated on January 8th and acknowledged on January 9, 1892. After making these answers, Meehan was confronted with the deed from John Burke to his son Patrick and shown his signature. He then said that he thought his name as an attesting witness there was his signature. Subsequently, he expressed doubt as to whether it was his signature or not but did not deny that he had taken the acknowledgment of the deed. He admitted on cross-examination that the plaintiff had called on him after this action was brought, talked with him about the deeds, and that he had told the plaintiff that he couldn't remember about the deeds from his father to his mother and from Patrick to his mother. He also admitted that he had said the same thing to both counsel for the plaintiff. Later in his testimony, he testified that he knew very little or scarcely knew anything about the acknowledgment of the two deeds. He also admitted that Patrick Burke had called on him in regard to the matter, and that subsequently he had written Patrick that he couldn't help him and advised Patrick to settle the case. Meehan's testimony as a whole seems to disclose the fact that he had no clear or distinct recollection as to whether he took the acknowledgment of either of the two deeds or as to what was done at the time it is alleged the deeds were executed. We think the learned court was right in holding that his testimony was not sufficient to invalidate the deed from Patrick Burke to Bridget Burke.

It must be conceded that the grantor may attack a deed on the ground of forgery, either as to its execution

or acknowledgment, or that it was fraudulently obtained from him. This may be done by parol evidence, and it then becomes a question for the jury. The evidence, however, should be sufficiently satisfactory to convince a jury that the forgery or fraud had been established. The law presumes that the deed was duly executed and acknowledged and the evidence in support of the forgery or fraud should be sufficiently explicit to rebut the presumption. Neither fraud nor forgery will be presumed and when it is alleged and attempted to be shown the evidence must be sufficiently clear and explicit that a jury could reasonably find it as a fact. If the evidence is not of this character the court should withdraw the case from the jury. It is not for a jury to guess that a deed which purports to be duly executed and acknowledged and is of record is tainted either with forgery or fraud. Evidence must be produced which will bring conviction of the fact to twelve reasonable and intelligent jurymen. Since the scintilla doctrine has been exploded, both in England and in this country, the preliminary question of law for the court is, not whether there is literally no evidence, or a mere scintilla, but whether there is any that ought reasonably to satisfy the jury that the fact sought to be proved is established. If there is evidence from which the jury can properly find the question for the party on whom the burden of proof rests, it should be submitted; if not, it should be withdrawn from the jury: Hyatt v. Johnston, 91 Pa. 196, 200.

In Cover v. Manaway, 115 Pa. 338, an attempt was made by the plaintiffs to show that a deed was executed two or three years after the time it bore date, and three witnesses were called for that purpose and to show that the deed was fraudulent. The testimony was submitted to the jury and a verdict was rendered in favor of the plaintiffs. In reversing the judgment, Mr. Justice CLARK, delivering the opinion, said (p. 345): "When a deed is found in the hands of a grantee, having on its

face the evidence of its regular execution, it will be presumed to have been made on the day of its date; and this presumption is greatly strengthened, if it is accompanied by an acknowledgment of the same date, in proper form, before a proper officer.......The acknowledgment of a deed is a judicial act, and the certificate of it, in the absence of fraud, is conclusive as to the facts therein stated.......But parol evidence may be introduced to show that a fraud was practiced, not only in the execution of the deed, but in the obtaining of the acknowledgment. Fraud, however, is not to be presumed without proof, nor upon proof which is slight; it must be established upon satisfactory evidence; it must be sufficiently explicit in its character to fairly rebut the presumption, which the law raises, as to the due execution of the deed, and the acknowledgment." The evidence of fraud was also held to be insufficient to submit to a jury on the question of the truth of a certificate in Hultz v. Ackley, 63 Pa. 142, and in Oppenheimer v. Wright, 106 Pa. 569.

The assignments of error are overruled and the judgment is affirmed.